RECEIVED

SEP 26 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Candy Fleet LLC

Civil Action No. 6:14-1799

versus

Judge Richard T. Haik, Sr.

Goodman

Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is an appeal from a final judgment of the United States Bankruptcy Court for the Western District of Louisiana filed by Appellant, Candy Fleet LLC, against the Trustee of the Gulf Fleet Liquidating Trust, Alan Goodman, Appellee. Briefs have been filed by both parties, Appellant [Rec. Doc. 7], Appellee [Rec. Doc. 8], Appellant's Reply [Rec. Doc. 9] and Appellee's Sur-reply [Rec. Doc. 12]. For the reasons that follow, the judgment of the Bankruptcy Court will be affirmed.

*I. Background*

On May 15, 2010, Gulf Fleet Holdings, Inc. filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Court for the Western District of Louisiana ("Bankruptcy Court"). Prior to filing bankruptcy, Gulf Fleet owned and operated a fleet of offshore service vessels that supported oil and gas exploration and production companies and oilfield service companies. Gulf Fleet also served as a third party broker for other vessels. In the ninety days prior to filing bankruptcy, the "preference period," Gulf Fleet made three payments to Candy Fleet totaling $166,625.00 on account of antecedent debt owned by Gulf Fleet's customers to Candy Fleet: $6,475.00, *R. 3-5, Exhs. 4 & 5*, $75,600, *R. 3-5, Exhs. 6 & 7*, and $84,550, *R. 3-5, Exhs. 1 & 2. R. 3.8 & 3.9*.

Each of the three payments involved Gulf Fleet entering into a "Charter Agreement" with Candy Fleet which provided that Candy Fleet would charter its vessel for third parties. *R. 3.8 (Jt. Tr, Exh. 1)*. Upon performance, Candy Fleet invoiced Gulf Fleet for the amount

due under the terms of each of the Charter Agreements. *Id.* The invoices provided that the payment would be due from Gulf Fleet to Candy Fleet in "Net 30 days." R. 3.9 *(Jt. Tr. Exh. 2).* Candy Fleet, however, would not receive payment until Gulf Fleet invoiced and received payment from its end customer, i.e., "pay-when-paid." R. 4, 7.

Appellee, Alan Goodman, Trustee of the Gulf Fleet Liquidating Trust, filed an adversary proceeding in the bankruptcy proceeding against Candy Fleet asserting preference claims under 11 U.S.C. § 547(b) and seeking avoidance of the three payments made by Gulf Fleet to Candy Fleet totaling $166,625 during the ninety-day preference period. A trial was conducted on January 27, 2014. At trial, the parties stipulated to the elements of a preference claim under 11 U.S.C. § 547(b)—that the payments made by Gulf Fleet were made (1) to or for the benefit of Candy Fleet, a creditor; (2) for or on account of an antecedent debt owed by Gulf Fleet; (3) while Gulf Fleet was insolvent; (4) on or within 90 days before the date of the filing of Gulf Fleet's bankruptcy petition; and (5) that enabled Candy Fleet to receive more than it would have received had the transfers not been made. R. 4. On April 7, 2014, the Bankruptcy Court entered a Judgment against Candy Fleet in favor of the Trustee on the preference claim. R. 4.

Candy Fleet filed this bankruptcy appeal on June 19, 2014. In its brief, Candy Fleet states that "the core issue of this appeal is that the Bankruptcy Court erred by not allowing Candy Fleet's 'ordinary course of business' defense to defeat the Trustee's preference claim." R. 7.

*II. Standard*

This Court has jurisdiction to hear an appeal of a bankruptcy court order. 28 U.S.C. § 158. In reviewing a decision of the bankruptcy court, Rule 8013 of the Federal Rules of Bankruptcy Procedure requires the court to accept the bankruptcy court's findings of fact

2

unless clearly erroneous and to examine de novo the conclusions of law. *See In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012). Mixed questions of law and fact are also reviewed de novo. *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir.2009).

### III. Discussion

As a threshold matter, the parties disagree as to the appropriate standard of review that applies to the Bankruptcy Court's ruling. Citing *In re Stinson Petroleum Co., Inc.*, 506 Fed.Appx. 305 (5th Cir. 2013), Candy Fleet contends that the "ordinary course of business" defense is provided by statute and therefore requires a de novo review. The Trustee argues that because the "ordinary course of business" is an affirmative defense the Bankruptcy Court's ruling must be reviewed under a clearly erroneous standard.

In *Stinson*, the bankruptcy court was required to interpret section 547(b)(5) in order to determine whether the fifth element of the statute had been met. *Id.* Here, the parties stipulated to the elements of section 547(b) and the bankruptcy court was not required to provide any construction of the statute. Rather, the Bankruptcy Court's conclusion that the preferences were avoidable rested on its factual findings that the subject transfers were not within the ordinary course of business between Gulf Fleet and Candy Fleet and pursuant to ordinary terms of the industry. Because these are factual questions, the Court must review the findings of the Bankruptcy Court under the clearly erroneous standard of review. *In re JJSA Liquidation Trust*, 2004 WL 1900513, 2 (E.D.La.,2004) (citing *Braniff Airways v. Midwest Corp.*, 873 F.2d 805, 806 (5th Cir.1989) ("Whether or not a payment is made in the ordinary course of business and according to ordinary business terms is a factual

3

determination which should not be set aside unless clearly erroneous.").[1]

"A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Duncan*, 562 F.3d 688, 694 (5th Cir.2009). If the bankruptcy court's view of the evidence "is plausible in light of the record viewed in its entirety, the court [] may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently." *Matter Of Martin*, 963 F.2d 809, 814 (5th Cir.1992). In fact, "[if] there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

The focus of the trial in this matter was Candy Fleet's "ordinary course of business" defense under 11 U.S.C. § 547(c)(2). The purpose of section 547(c)(2) is to distinguish between ordinary payments and those which "represent collusive arrangements designed to favor the particular creditor during the debtor's slide into bankruptcy." *In re Gulf City Seafoods*, 296 F.3d 363, 367 (5th Cir.2002).

Section 547(c)(2) of the Bankruptcy Code states that a payment made during the preference period need not be returned to the debtor's estate

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms.

---

[1] Other circuits agree that the bankruptcy court's determinations under § 547(c)(2) are factual and are reviewed for clear error. *See e.g., In re Healthco Intern., Inc.*, 132 F.3d 104, 107-108 (1st Cir.1997) (courts engage in a factual analysis to determine if a payment was made in the "ordinary course of business"); *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479 (4th Cir.1992) (same); *In re Fulghum Construction Corp.*, 872 F.2d 739 (6th Cir.1989) (same); *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 70 (3d Cir.1989) (same).

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Gulf Fleet has the burden of persuasion as to each element of the defense. *Id.* at 368 n. 5. Gulf Fleet's challenge centers on the requirements of section 547(c)(2)(A) and (B): whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). *In re SGM Acquisition Co. LLC*, 439 F.3d 233, 239 (5th Cir.2006).

Section 547(c)(2)(A), the subjective prong of the ordinary course defense, requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." *In re Sea Bridge Marine, Inc.*, 412 B.R. 868, 872 (Bankr.E.D.La.,2008). "The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition." *In re Central Louisiana Grain Co-op., Inc.*, 497 B.R. 229, 236 (Bkrtcy.W.D.La.,2013) (citing *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir.2003); *In re Quad Systems Corp.*, 2003 WL 25947345, at *5 (Bankr.E.D.Pa.,2003)). "A creditor typically addresses these factors by establishing a 'baseline of dealing' as far as the parties' past billing, payment, and collection practices. A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment practices between the parties during the pre-preference period." *Id.* (citing *In re Accessair, Inc.*, 314 B.R. 386, 393 (8th Cir. BAP 2004).

Candy Fleet argues that the bankruptcy court ignored three of the four factors listed

in the foregoing and departed from its own established method for identifying the baseline of dealing between the parties. The Court disagrees. The record indicates that, using the parties' payment history from January 1, 2008 through April 30, 2009, *R. 3-5, Exh. 3*, the bankruptcy judge analyzed the average time period between Gulf Fleet's receipt of payment from the end customer and the payment to Candy Fleet (the "pay-when-paid" arrangement). *R. 4*. The payment history indicated that the average payment gap during the preference period was approximately 22.5 days, while the average payment gap for the period from January 1, 2008 through April 30, 2009 was 14.6 days—an almost 50% increase. *R. 3-5, Exh. 3*. The bankruptcy specifically analyzed the payment activity of 2008, during which the company was "adequately capitalized" and could meet its obligations, *R. 3-5, Exh. 8, Prejean Depo., pp. 19, 73*, compared to that of 2009, during which there was a deteriorating financial condition, *Id. at pp. 18-19*. In doing so, the Bankruptcy Court found that the parties' payment history during 2008 was a more sound baseline of determining the ordinary course of business defense. *R. 4*. While there was only a 13-day average gap in 2008, there was a significant change in payment practices during 2009. *Id.* For the first four months of 2009, the average gap rose to approximately 22 days. *Id.* Then, from May through December, 2009, the average gap increased to approximately 113 days. *Id.* Thereafter, during the preference period in 2010, the average gap decreased to 22.5 days. *Id.* In examining this decrease during the preference period, the Bankruptcy Judge found that the impact of a cash infusion by Gulf Fleet's owner, H.I.G. Capital, in February 2010, allowed Gulf Fleet to pay old invoices more rapidly than the 113-day average during the second half of 2009. *R. 3-5, Exh. 8, Prejean Depo., pp. 87-88*. Based on the foregoing, the Bankruptcy Judge found that the parties' pre-preference period payment history did not support an ordinary course defense under the subjective prong of section 547(c)(2).

Because the Bankruptcy Code does not define the phrase "ordinary business terms" in the objective prong, section 547(c)(2)(C), courts have been left to fashion a definition or a test as to whether payments were made according to "ordinary business terms." In *In Gulf City Seafoods, Inc.*, the Fifth Circuit noted the general consensus among the circuit courts that in examining industry practice under § 547(c)(2)(C), the relevant inquiry is "'objective'; that is to say, we compare the credit arrangements between other similarly situated debtors and creditors in the industry." 296 F.3d 363, 368 (5th Cir.2002). The court stated that "the ultimate question is simply whether a particular arrangement is so out of line with what others do that it fails to be 'according to ordinary business terms.'" *Id.* at 369.

Whether a creditor has met its burden in proving this prong "belongs[ ]with the bankruptcy judge. We only say that the judge must satisfy himself or herself that there exists some basis in the practices of the industry to authenticate the credit arrangement at issue." *Id.* at 369. Here, the Bankruptcy Court agreed that a "pay when paid" payment arrangement was customary in the relevant industry. *R. 4.* The Bankruptcy Court found, however, that "the payment history between Gulf Fleet and Candy Fleet after 2008 was driven largely by circumstances unique to Gulf Fleet, and this shifting payment history largely tracks Gulf Fleet's deteriorating financial condition in 2009." *Id.* Ultimately, the Bankruptcy Judge held that the record did not support an ordinary course defense based on industry custom under the objective prong.

"A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Cahill*, 428 F.3d 536, 542 (5th Cir.2005). "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying

some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *In re Antelope Technologies, Inc.*, 2010 WL 2901017, 3 (S.D.Tex.,2010) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir.1973)). After reviewing the Bankruptcy Court's findings in light of the record evidence in this case, the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous. The payments made by Gulf Fleet to Candy Fleet were not in the ordinary course of business nor according to ordinary business terms. Accordingly, the Court will affirm the judgment of the Bankruptcy Court.

                                              Richard T. Haik, Sr.
                                              United States District Judge